**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

JOSE BALTAZAR-MONTERROSA,        )
                                 )
              Petitioner,        )        3:10-cv-00002-RCJ-WGC
                                 )
vs.                              )        **ORDER**
                                 )
JACK PALMER, *et al.*,           )
                                 )
              Respondents.       )
_____ /

This action is a *pro se* petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254, by a Nevada state prisoner.  This matter comes before the Court on the merits of the petition.

**I. Procedural History**

On June 3, 2003, the State charged petitioner by criminal complaint with Count I, murder with the use of a deadly weapon, and Count II, robbery.  (Exhibit 2).[1]  Following a preliminary hearing, petitioner was bound over to the district court.  (Exhibit 5, at p. 147).  On August 4, 2003, the State charged petitioner in the Second Judicial District Court for the State of Nevada, by information with Count I, murder with the use of a deadly weapon and Count II, robbery.  (Exhibit

---

[1]  The exhibits referenced in this order are found in the Court's record at ECF Nos. 13-16.

7).  Petitioner pleaded not guilty to both counts.  (Exhibit 8, at p. 3).  On November 20, 2003, an amended information was filed with the state district court, which omitted the deadly weapon enhancement from the charges, pursuant to a plea negotiation.  (Exhibit 19).  In the change of plea hearing on November 25, 2003, petitioner rejected the plea agreement.  (Exhibit 21, at p. 2).  A second amended information, which contained the same two counts as the original information, was filed on February 2, 2004.  (Exhibit 29).

A five-day jury trial commenced on September 13, 2004.  (Exhibit 54).  On September 17, 2004, the court read the jury instructions and counsel presented closing arguments.  (Exhibit 58).  That afternoon, the jury returned a verdict of guilty on all counts.  (Exhibit 58, at pp. 644-48; Exhibit 60).  After a subsequent penalty hearing, the jury selected a sentence of life with the possibility of parole after 20 years for the murder, with an identical and consecutive sentence for the deadly weapon enhancement.  (Exhibit 58, at p. 673; Exhibit 60).  The court imposed the sentence selected by the jury for Count I, and sentenced petitioner to a concurrent term of 40-180 months on Count II.  (Exhibit 47).  The judgement of conviction was entered on October 28, 2004.  (*Id.*).

On November 18, 2004, petitioner filed a direct appeal.  (Exhibit 48).  On May 26, 2005, petitioner's opening brief was filed.  (Exhibit 66).  On July 13, 2006, the Nevada Supreme Court issued a published opinion in which it affirmed petitioner's conviction.  (Exhibit 70).

On April 30, 2007, petitioner filed a *pro per* post-conviction habeas petition in state court.  (Exhibit 74).  Counsel was appointed, and on December 31, 2007, counsel filed a supplement to the petition.  (Exhibit 84).  On October 23, 2008, the state district court issued an order denying the state habeas petition.  (Exhibit 86).  On November 24, 2008, petitioner appealed the denial of his state habeas petition.  (Exhibit 88).  On March 16, 2009, petitioner's opening brief was filed.  (Exhibit 93).  On November 3, 2009, the Nevada Supreme Court issued an order affirming the denial of the state habeas petition.  (Exhibit 98).  Remittitur issued on December 1, 2009.  (Exhibit 99).

1   On December 30, 2009, petitioner dispatched his federal habeas petition to this Court. (ECF

2   No. 4, at p. 1). The federal habeas petition contains nine grounds for relief. Respondents filed a

3   motion to dismiss the petition. (ECF No. 12). By order filed January 26, 2011, this Court denied the

4   motion to dismiss in its entirety. (ECF No. 22). Respondents were directed to file an answer to the

5   petition. (*Id.*). Respondents have filed an answer. (ECF No. 24). Petitioner has not filed a reply to

6   the answer.

7   **II.  Federal Habeas Corpus Standards**

8   The Antiterrorism and Effective Death Penalty Act ("AEDPA"), at 28 U.S.C. § 2254(d),

9   provides the legal standard for the Court's consideration of this habeas petition:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The AEDPA "modified a federal habeas court's role in reviewing state prisoner applications

in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect

to the extent possible under law." *Bell v. Cone,* 535 U.S. 685, 693-694 (2002). A state court

decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C.

§ 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme

Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from

a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme

Court's] precedent." *Lockyer v. Andrade,* 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor,* 529

U.S. 362, 405-406 (2000) and citing *Bell v. Cone,* 535 U.S. 685, 694 (2002)).

1    A state court decision is an unreasonable application of clearly established Supreme Court

2    precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court identifies the correct

3    governing legal principle from [the Supreme Court's] decisions but unreasonably applies that

4    principle to the facts of the prisoner's case." *Lockyer v. Andrade,* 538 U.S. at 75 (quoting *Williams*,

5    529 U.S. at 413).  The "unreasonable application" clause requires the state court decision to be more

6    than merely incorrect or erroneous; the state court's application of clearly established federal law

7    must be objectively unreasonable.  *Id.* (quoting *Williams*, 529 U.S. at 409).

8    In determining whether a state court decision is contrary to, or an unreasonable application of

9    federal law, this Court looks to the state courts' last reasoned decision.  *See Ylst v. Nunnemaker*, 501

10   U.S. 797, 803-04 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000), *cert.*

11   *denied*, 534 U.S. 944 (2001).  Moreover, "a determination of a factual issue made by a State court

12   shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the

13   presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

14   **III.  Discussion**

15   **A.  Ground One**

16   Petitioner alleges that the state district court abused its discretion by dismissing his post-

17   conviction state habeas petition without holding an evidentiary hearing.  (ECF No. 4, at p. 3; pp. 20-

18   26).  Petitioner raised this issue on appeal from the denial of his petition.  (Exhibit 93).  In addressing

19   this issue, the Nevada Supreme Court restated Nevada case law holding that: "To warrant an

20   evidentiary hearing, a petitioner must raise claims that are supported by specific factual allegations

21   that are not belied by the record and, if true, would entitle him to relief.  Hargrove v. State, 100 Nev.

22   498, 502-03, 686 P.2d 222, 225 (1984)."  (Exhibit 98, at p. 2).  There is no United States Supreme

23   Court authority to support petitioner's claim that he was entitled to an evidentiary hearing in state

24   court.  The Nevada Supreme Court reviewed each of petitioner's claims of ineffective assistance of

25   counsel and held that because each claim was without merit, the state district court did not err in

26

4

1   dismissing the claim without an evidentiary hearing.  (Exhibit 98, at pp. 2-14).  The factual findings

2   of the state court are presumed correct.  28 U.S.C. § 2254(e)(1).  The Nevada Supreme Court cited to

3   and applied the correct federal standard of *Strickland v. Washington*, 466 U.S. 668 (1984).  (Exhibit

4   98, at p. 2).  Petitioner has failed to meet his burden of proving that the Nevada Supreme Court's

5   ruling was contrary to, or involved an unreasonable application of, clearly established federal law, as

6   determined by the United States Supreme Court, or that the ruling was based on an unreasonable

7   determination of the facts in light of the evidence presented in the state court proceeding.  This Court

8   denies habeas relief on Ground One of the federal petition.

9       **B.  Grounds Two and Eight**

10      Both Ground Two and Ground Eight of the federal habeas petition involve the testimony of

11  the State's witness, Juan Morales-Fernandez.  In Ground Eight, petitioner claims that the state

12  district court erred by precluding defense counsel from cross-examining State's witness Juan

13  Morales-Fernandez about his immigration status and its impact on his testimony.  (ECF No. 4, at p.

14  31).  In Ground Two, petitioner claims that trial counsel was ineffective for failing to cross-examine

15  Morales-Fernandez on the same subject.  (ECF No. 4, at pp. 6-8).

16      **1.  Ground Eight**

17      Petitioner raised the issue of trial court error in his direct appeal.  (Exhibit 66, at p. 32).  The

18  Nevada Supreme Court concluded that the error was harmless, ruling as follows:

19          Baltazar-Monterrosa argues that the district court erred by refusing to
            allow the defense to ask about Morales-Fernandez's immigration status
20          because it prevented the defense from eliciting testimony that Morales-
            Fernandez was threatened with deportation unless he testified against
21          Baltazar-Monterrosa.

22          At trial, during the defense's cross examination of Morales-Fernandez,
            an issue arose as to the relationship between Morales-Fernandez's
23          immigration status and his credibility as a witness, specifically,
            whether anyone had threatened him with deportation if he did not
24          testify or if he did not testify in a particular manner.  The district court
            noted that the matter was not clear and allowed both sides to examine
25          Morales-Fernandez on voir dire regarding the matter.  On voir dire,
            Morales-Fernandez testified that an INS interpreter translated for him
26

5

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

at his second interview with police. He testified that the authorities did not tell him that he would be deported if he did not testify, but that was his understanding. The court then further questioned Morales-Fernandez, who stated that he believed he had signed a consent to deportation prior to testifying. The court then determined that Morales-Fernandez's immigration status was irrelevant because his consent removed the threat of deportation as leverage compelling him to testify.

Again, the district court's decision to admit or exclude evidence is reviewed for an abuse of discretion. However, the trial court's discretion is more narrow where bias is the object to be shown, and an examiner must be permitted to elicit any facts which might color a witness's testimony. Generally, the only proper restriction should be those inquiries which are repetitive, irrelevant, vague, speculative, or designed merely to harass, annoy or humiliate the witness.

We conclude that the district court erred by refusing to allow Baltazar-Monterrosa's defense counsel the opportunity to impeach Morales-Fernandez's veracity, but we further conclude that the error was harmless beyond a reasonable doubt in light of the overwhelming physical evidence in the record, as well as Baltazar-Monterrosa's own admission to police about his involvement in the crimes.

(Exhibit 70, at pp. 16-17) (internal citations and quotations omitted).

The Nevada Supreme Court's conclusion that the state district court's restriction on cross-examination was "harmless beyond a reasonable doubt in light of the overwhelming physical evidence in the record, as well as Baltazar-Monterrosa's own admission to police about his involvement in the crimes," was not contrary to or an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States. 28 U.S.C. § 2254(d); *see Coy v. Iowa*, 487 US. 1012, 1021 (1988) (stating that violations of the Confrontation Clause are subject to harmless-error review). Nor was the Nevada Supreme Court's ruling based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d).

The factual findings of the state court are presumed correct. 28 U.S.C. § 2254(e)(1). Petitioner has not overcome the presumption of correctness afforded to the state court's factual findings regarding the overwhelming evidence of his guilt. The record indicates that there was overwhelming evidence of petitioner's guilt. Evidence presented at trial established that the victim's

6

1    body was discovered in a hotel around midnight on May 23, 2003.  (Exhibit 54, at pp. 55-56).  A

2    subsequent search of petitioner's hotel room revealed the victim's blood and DNA on the floor, a

3    rug, a table, the microwave, two towels, a pair of pants, broken glass, the bathtub, and the walls.

4    (Exhibit 54, at pp. 81-87, 125-36; Exhibit 57, at pp. 372-74, 382-92, 439-42, 451-62).  The victim's

5    blood and DNA were also found on petitioner's shirt, jeans, and tennis shoes.  (Exhibit 54, at pp.

6    122-24; Exhibit 57, at pp. 379-81, 448-51).  Petitioner's DNA was on the victim's sock and on the

7    towel used to strangle him.  (Exhibit 55, at pp. 208-12, 284-86; Exhibit 57, at pp. 374-78, 442-46).

8    The victim's shirt had a bloodstain on the back of it matching the pattern of petitioner's right shoe.

9    (Exhibit 57, at pp. 410-413).  The victim's watch and bank card were found under petitioner's

10   mattress and his house key was also found in petitioner's hotel room.  (Exhibit 54, at pp. 49-51;

11   Exhibit 56, at pp. 306-09, 312-14).  When this evidence is considered in conjunction with

12   petitioner's admission that he participated in the murder, it is plain that the Nevada Supreme Court's

13   conclusion that the error was harmless was a reasonable one.

14          Petitioner has failed to meet his burden of proving that the Nevada Supreme Court's ruling

15   was contrary to, or involved an unreasonable application of, clearly established federal law, as

16   determined by the United States Supreme Court, or that the ruling was based on an unreasonable

17   determination of the facts in light of the evidence presented in the state court proceeding.  This Court

18   denies habeas relief on Ground Eight of the federal petition.

19          **2. Ground Two**

20          Petitioner raised an ineffective assistance of counsel claim regarding his counsel's failure to

21   cross-examine Morales-Fernandez on appeal from the dismissal of his state petition.  (Exhibit 93, at

22   pp. 11-13).  The Nevada Supreme Court rejected the claim, as follows:

23              [A]ppellant argues that his trial counsel was ineffective for failing to
                cross-examine witnesses about possible coercion of Fernando Morales'
24              testimony and for failing to object when Morales stated that he was
                afraid of appellant.  Appellant fails to demonstrate that his trial
25              counsel's performance was deficient or that he was prejudiced.
                Appellant's trial counsel attempted to question Morales about possible
26

7

1

> coercion, but was precluded from doing so by the district court.
> Further, this court considered and rejected the underlying claims on
> direct appeal.  Because this court rejected the merits of the underlying
> claims, appellant cannot demonstrate that he was prejudiced.
> Therefore, the district court did not err in dismissing these claims
> without conducting an evidentiary hearing.

(Exhibit 98, at pp. 5-6).  The factual findings of the state court are presumed correct and petitioner

has not overcome the presumption of correctness afforded to the state court's factual findings.  28

U.S.C. § 2254(e)(1).  The Nevada Supreme Court cited to and applied the correct federal standard of

*Strickland v. Washington*, 466 U.S. 668 (1984).  (Exhibit 98, at p. 2).  Counsel was not ineffective

under the deferential *Strickland* standard.  *Harrington v. Richter*, ___U.S. ___, 131 S.Ct. 770, 788

(2011).  Petitioner has failed to meet his burden of proving that the Nevada Supreme Court's ruling

was contrary to, or involved an unreasonable application of, clearly established federal law, as

determined by the United States Supreme Court, or that the ruling was based on an unreasonable

determination of the facts in light of the evidence presented in the state court proceeding.  This Court

denies habeas relief on Ground Two of the federal petition.

**C.  Ground Three**

In Ground Three of the federal habeas petition, petitioner claims: "Appellant is entitled to the

benefit of the plea bargain that was offered by the State prior to trial.  A failure to spend adequate

time with the client, failure to review defenses with the client, and failure to explain the evidence

against appellant led [to] the appellant's inability to evaluate the evidence against him prior to

declining the plea offer of the State."  (ECF No. 4, at p. 8).  Petitioner also alleges that counsel was

ineffective for failing to have a proper interpreter during meetings.  (*Id.*, at pp. 11).  These claims

were presented to the Nevada Supreme Court on appeal from the denial of petitioner's state habeas

petition.  The Nevada Supreme Court found the claims to be without merit, as follows:

> [A]ppellant claims that trial counsel was ineffective for failing to
> provide him with sound legal advice regarding the State's plea offer so
> as to ensure that he understood the offer.  The record indicates that
> appellant initially agreed to the plea offer, but changed his mind on the
> day he was to enter a guilty plea.  While the record is not entirely clear,

it appears that the State offered to dismiss the deadly weapon enhancement in exchange for appellant's guilty plea to first-degree murder and robbery.  Appellant failed to demonstrate that his trial counsel's performance was deficient or that he was prejudiced.  To establish a claim of ineffective assistance of counsel for advice regarding a plea offer, a petitioner must demonstrate that the advice was not within the range of competence required by counsel in a criminal case and that "but for counsel's errors, he would have pleaded guilty and would not have insisted on going to trial." Turner v. Calderon, 281 F.3d 851, 879 (9th Cir. 2002).  In order to demonstrate that trial counsel's performance was not within the required range of competence, the petitioner "'must demonstrate gross error on the part of counsel' . . . that 'the advice . . . he received was so incorrect and so insufficient that it undermined [the petitioner's] ability to make an intelligent decision about whether to accept the [plea] offer.'" Id. at 880 (second alteration in original) (quoting McMann v. Richardson, 397 U.S. 759, 772 (1970) and U.S. v. Day, 969 F.2d 39, 43 (3d Cir. 1992)).  In the instant case, appellant does not allege that trial counsel failed to inform him of the plea offer or discuss the plea offer with him.  In fact, the record indicates that appellant was informed of the plea offer as appellant initially agreed to it, but changed his mind shortly before the entry of the plea hearing.  Further, appellant fails to demonstrate gross error on the part of counsel in providing advice concerning the plea offer.  In addition, appellant fails to demonstrate a reasonable probability that he would have insisted on accepting the plea offer had trial counsel offered different advice.  Under these circumstances, appellant failed to demonstrate that his trial counsel was ineffective.  Therefore, the district court did not err in dismissing this claim without conducting an evidentiary hearing.

(Exhibit 98, at pp. 2-4).  The Nevada Supreme Court went on to rule:

[A]ppellant argues that his trial counsel was ineffective for failing to ensure that a Spanish interpreter was available to discuss the case with appellant.  Appellant fails to demonstrate that he was prejudiced.  A review of the record reveals that there was an interpreter present during the proceedings before the district court and there is nothing in the record to indicate that appellant had any trouble understanding those proceedings.  To the extent that appellant alleges that there was no interpreter available for out-of-court proceedings, appellant put forth only bare and naked claims without any factual support. Hargrove, 100 Nev. at 502-03; 686 P.2d at 225.  Accordingly, appellant fails to demonstrate a reasonable probability that the outcome of the proceedings would have been different had his trial counsel sought further assistance of Spanish interpreters.  Therefore, the district court did not err in dismissing this claim without conducting an evidentiary hearing.

(Exhibit 98, at p. 5).

9

1    Under *Strickland v. Washington*, 466 U.S. 668 (1984), a petitioner must show, first, that

2  counsel's representation fell below an objective standard of reasonableness, based on prevailing

3  professional norms.  *Id.* at 688-90.  Second, the petitioner must demonstrate that the identified acts

4  or omissions of counsel prejudiced his defense.  He must establish "a reasonable probability that, but

5  for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at

6  694.  The application of the *Strickland* test where ineffectiveness of counsel is alleged to invalidate a

7  plea has been defined as follows:

8           [T]he two-part *Strickland v. Washington* test applies to challenges to
         guilty pleas based on ineffective assistance of counsel.  In the context
9        of guilty pleas, the first half of the *Strickland v. Washington* test is
         nothing more than a restatement of the standard of attorney
10       competence already set forth in *Tollett v. Henderson, supra*, and
         *McMann v. Richardson, supra*.  The second, or "prejudice,"
11       requirement, on the other hand, focuses on whether counsel's
         constitutionally ineffective performance affected the outcome of the
12       plea process.  In other words, in order to satisfy the "prejudice"
         requirement, the defendant must show that there is a reasonable
13       probability that, but for counsel's errors, he would not have pleaded
         guilty and would have insisted on going to trial.

14  *Hill v. Lockhart*, 474 U.S. 52, 58 (1985).  The modified *Strickland* prejudice standard in guilty plea

15  cases asks whether there is a probability that, but for counsel's alleged errors, defendant would not

16  have pleaded guilty, but would have insisted on going to trial.  *Langford v. Day*, 110 F.3d 1380,

17  1387 (9th Cir. 1997); *see also Turner v. Calderson*, 281 F.3d 851, 879-80 (citations omitted).  The

18  failure of petitioner to prove prejudice is sufficient to deny the claim.  *Donganiere v. United States*,

19  914 F.2d 165, 168 (9th Cir. 1990).  In the context of plea negotiations, counsel has a duty to

20  independently investigate the facts, circumstances, pleadings, and law to offer an informed opinion

21  as to what plea should be entered.  *Von Moltke v. Gilies*, 332 U.S. 708, 721 (1948).  A defendant has

22  the right to make a reasonably informed decision whether to accept a plea offer.  *See Hill*, 474 U.S.

23  at 56-57; *Turner v. Calderon*, 281 F.3d 851, 880 (9th Cir. 2002).

24       The Nevada Supreme Court applied the correct federal constitutional standard where

25  ineffectiveness of counsel is alleged to invalidate a plea.  (Exhibit 98, at pp. 2-4).  The central facts

26

10

are not in dispute – by petitioner's own account he was presented with a plea bargain and, after initially accepting it, he ultimately rejected it.  (ECF No. 4, at pp. 9-10; Exhibit 21; Exhibit 24; Exhibit 28, at p. 69).  Petitioner now argues that, had counsel discussed the case with him in more detail, he would have accepted the offer.  (ECF No. 4, at p. 9).  However, petitioner fails to show that counsel's performance fell below an objective standard of reasonableness.

Petitioner argues that if counsel had spent adequate time with him, he "would have been able to review the evidence against him, discuss possible defense to the charges, discuss the deadly weapon enhancement, and been able to make an informed decision."  (ECF No. 4, at pp. 8-9). Petitioner argues that counsel should have reviewed all of this information with him with the help of an interpreter.  (*Id.*, at p. 11).  However, petitioner does not state how much time would have been "adequate."  Petitioner does not specify the evidence of which he was unaware, and he does not specify which available defenses should have been discussed.  (*See* ECF No. 4, at pp. 8-16).

Moreover, where petitioner makes specific allegations of ineffective assistance of counsel, these allegations are belied by the record.  Petitioner claims that "adequate investigation" would have revealed that "the State possessed a witness who would testify that the use of a gag did not cause the asphyxiation of the victim."  (ECF No. 4, at p. 10).  However, the State was not aware that it had such a witness until it received the report of Dr. Ellen Clark, dated November 13, 2003.  (*See* Exhibit 24, at pp. 2-5).  Petitioner rejected the plea offer on November 25, 2003.  (Exhibit 21, at p. 3). Petitioner fails to show that the fact he was unaware of Dr. Clark's report during those 12 days was the result of objectively unreasonable efforts by counsel.  It was the State's duty to provide Dr. Clark's report to the defense prior to trial, and it complied with that duty.  (*See* Exhibit 25).

Petitioner claims that "[p]roper preparation would have provided petitioner with an understanding that if the State won on the use of a gag as a deadly weapon, then petitioner would get a double sentence."  (ECF No. 4, at p. 10).  Petitioner fails to show that counsel's performance was deficient because during the negotiations, the deadly weapon enhancement was based on the use of a

1    ligature.  (*See* Exhibit 7).  It was not until after petitioner rejected the plea offer that the State

2    amended the information, based on a newly received report, to include the alternative allegation that

3    the victim was asphyxiated by a gag.  (See Exhibit 24, at pp. 2-5; Exhibit 7; Exhibit 29).  Petitioner's

4    trial counsel was not objectively unreasonable for failing to anticipate this new evidence.

5         As stated, the factual findings of the state court are presumed correct, and petitioner has not

6    overcome the presumption of correctness afforded to the state courts' factual findings regarding his

7    claims of ineffective assistance of counsel.  28 U.S.C. § 2254(e)(1).  The Nevada Supreme Court

8    cited to and applied the correct federal standards to petitioner's claims.  Petitioner has failed to meet

9    his burden of proving that the Nevada Supreme Court's ruling was contrary to, or involved an

10   unreasonable application of, clearly established federal law, as determined by the United States

11   Supreme Court, or that the ruling was based on an unreasonable determination of the facts in light of

12   the evidence presented in the state court proceeding.  Petitioner's counsel was not ineffective under

13   the deferential *Strickland* standard.  *Harrington v. Richter*, ___U.S. ___, 131 S.Ct. 770, 788 (2011).

14   This Court denies habeas relief on Ground Three of the federal petition.

15        **D.  Ground Four**

16        Petitioner claims that his trial counsel was ineffective "for failing to present his . . . allocution

17   to the sentencing jury."  (ECF No. 4, at p. 17).  Petitioner presented this exact claim to the Nevada

18   Supreme Court on appeal from the denial of his state habeas petition.  (Exhibit 93, at p. 23).  The

19   Nevada Supreme Court rejected this claim, as follows:

20              [A]ppellant argues that his trial counsel was ineffective for failing to
              present appellant's statement in allocution at the penalty hearing.
21            Appellant argues that his trial counsel failed to object when the district
              court did not ask appellant if he wanted to make a statement in
22            allocution.  Appellant argues that he would have stated that he had
              only been in the country for a short time and did not have a lengthy
23            criminal history.  Appellant fails to demonstrate that his trial counsel's
              performance was deficient or that he was prejudiced.  During the
24            penalty hearing, the district court asked appellant if he wanted to make
              a statement in allocution, to which appellant responded that he did not.
25            Following a short break, the district court again asked appellant if he
              wanted to make a statement, and appellant again responded that he did

26
                                        12

1
2
3
4

> not.  Further, appellant's short criminal history was noted at the
> penalty hearing.  Given the nature of the crime, appellant fails to
> demonstrate that there was a reasonable probability that the outcome of
> the penalty hearing would have been different had he stated that he had
> only been in the country for a short time.  Therefore, the district court
> did not err in dismissing this claim without conducting an evidentiary
> hearing.

5   (Exhibit 98, at p. 10).  The factual findings of the state court are presumed correct and petitioner has

6   not overcome the presumption of correctness afforded to the state court's factual findings.  28 U.S.C.

7   § 2254(e)(1).  The Nevada Supreme Court cited to and applied the correct federal standard of

8   *Strickland v. Washington*, 466 U.S. 668 (1984).  (Exhibit 98, at p. 2, 10).  Counsel was not

9   ineffective under the deferential *Strickland* standard.  *Harrington v. Richter*, ___U.S. ___, 131 S.Ct.

10  770, 788 (2011).  Petitioner has failed to meet his burden of proving that the Nevada Supreme

11  Court's ruling was contrary to, or involved an unreasonable application of, clearly established federal

12  law, as determined by the United States Supreme Court, or that the ruling was based on an

13  unreasonable determination of the facts in light of the evidence presented in the state court

14  proceeding.  This Court denies habeas relief on Ground Four of the federal petition.

15  **E.  Ground Five**

16  Petitioner claims that "trial counsel was ineffective for failing to have the jury instructed on

17  the defense theory of the case."  (ECF No. 4, at p. 17).  Petitioner presented this claim to the Nevada

18  Supreme Court on appeal from the denial of his state habeas petition.  (Exhibit 93, at p. 23).  The

19  Nevada Supreme Court rejected this claim and ruled as follows:

20
21
22
23
24
25
26

> [A]ppellant argues that his trial counsel was ineffective for failing to
> request that the district court give a jury instruction on the defense
> theory of the case.  Appellant argues that the jury was not properly
> instructed that a towel is an unforseen deadly weapon.  Appellant fails
> to demonstrate that his counsel's performance was deficient or that he
> was prejudiced.  NRS 193.165 does not require that the weapon used
> was foreseen to be a deadly weapon, only that the manner in which it is
> used was readily capable of causing substantial bodily harm or death.
> A towel used to asphyxiate someone fits the definition of a deadly
> weapon listed in NRS 193.165(6)(b).  Appellant does not cite anything
> to support his position that a proposed jury instruction would have
> been appropriate.  Mazzan v. Warden, 116 Nev. 48, 75, 993 P.2d 25,

13

42 (2000) (stating that "[c]ontentions unsupported by specific argument or authority should be summarily rejected on appeal"). Further, as there was substantial evidence of appellant's guilt as discussed earlier, appellant fails to demonstrate that there was a reasonable probability of a different outcome had his trial counsel requested a jury instruction on an unforeseen deadly weapon. Therefore, the district court did not err in dismissing this claim without conducting an evidentiary hearing.

(Exhibit 98, at p. 9).  The Nevada Supreme Court determined that NRS 193.165 does not require that

a weapon be foreseen to be a deadly weapon in order for the statute to apply.  Petitioner has not

presented any federal authority requiring or suggesting a contrary result.  The Nevada Supreme Court

cited to and applied the correct federal standard of *Strickland v. Washington*, 466 U.S. 668 (1984).

(Exhibit 98, at p. 2, 9).  Counsel was not ineffective under the deferential *Strickland* standard.

*Harrington v. Richter*, ___U.S. ___, 131 S.Ct. 770, 788 (2011).  Petitioner has failed to meet his

burden of proving that the Nevada Supreme Court's ruling was contrary to, or involved an

unreasonable application of, clearly established federal law, as determined by the United States

Supreme Court, or that the ruling was based on an unreasonable determination of the facts in light of

the evidence presented in the state court proceeding.  This Court denies habeas relief on Ground Five

of the federal petition.

## F.  Ground Six

Petitioner claims that his trial counsel was ineffective for failing to object to the amendment

of the charges in the information.  (ECF No. 4, at p. 19).  Petitioner claims that counsel's failure to

object to the Second Amended Information prejudiced him because the trial court relied on the lack

of objection as a basis to deny his pretrial petition for a writ of habeas corpus as procedurally moot.

(*Id.*; *see* Exhibit 28, at pp. 60-61).  Petitioner presented this claim to the Nevada Supreme Court on

appeal from the denial of his state post-conviction habeas petition.  (Exhibit 93, at pp. 25-26).  The

Nevada Supreme Court rejected the claim and held:

[A]ppellant argues that his trial counsel was ineffective for failing to object to the filing of a second amended information.  Appellant fails to demonstrate that his trial counsel's performance was deficient or

14

1
2
3
4
5
6
7
8
9

that he was prejudiced.  An amended information, which dropped the deadly weapon enhancement from the charges, was filed on the day appellant was to enter a guilty plea.  Following appellant's rejection of the plea agreement, a second amended information was filed which reinstated the original charges, including the deadly weapon enhancement and included a clarification of the facts of the crime, specifically that a towel or linen was used to strangle the victim.  As the second amended information was filed following appellant's rejection of a plea agreement, appellant fails to demonstrate that the second amended information was improper.  See NRS 173.035(4).  Further, as no additional offense was added and the additional facts did not affect appellant's substantial rights, he again fails to demonstrate that the second amended information was improper.  See NRS 173.095.  Accordingly, appellant fails to demonstrate that there was a reasonable probability that there would have been a different outcome in the proceedings had his trial counsel objected to the filing of the second amended information.  Therefore, the district court did not err in dismissing the claim without conducting an evidentiary hearing.

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

(Exhibit 98, at p. 4).  The factual findings of the state court are presumed correct and petitioner has not overcome the presumption of correctness afforded to the state court's factual findings.  28 U.S.C. § 2254(e)(1).  The Nevada Supreme Court cited to and applied the correct federal standard of *Strickland v. Washington*, 466 U.S. 668 (1984).  (Exhibit 98, at p. 2, 4).  Counsel was not ineffective under the deferential *Strickland* standard.  *Harrington v. Richter*, ___U.S. ___, 131 S.Ct. 770, 788 (2011).  Petitioner has failed to meet his burden of proving that the Nevada Supreme Court's ruling was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, or that the ruling was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  This Court denies habeas relief on Ground Six of the federal petition.

/ / / / / / / / / /

/ / / / / / / / / /

## G.  Ground Seven

Petitioner claims that his appellate counsel was ineffective for failing to challenge the use of linen as a deadly weapon or raise a claim that he did not possess the requisite intent to commit first-degree murder.  (ECF No. 4, at pp. 26-29).  Petitioner presented these claims to the Nevada Supreme

15

Court on appeal from the denial of his state habeas petition.  (Exhibit 93, at pp. 27-29).  The Nevada

Supreme Court rejected petitioner's claims of ineffective assistance of appellate counsel, concluding

that none of the underlying claims would have had a likelihood of success on appeal.  (Exhibit 98, at

pp. 11-13).  With regard to petitioner's claim that appellate counsel should have challenged the

deadly weapon enhancement based on the use of a towel as a gag, the Nevada Supreme Court ruled:

> [A]ppellant argues that the district court erred in dismissing his claim
> that his appellate counsel was ineffective for failing to argue whether
> the towel was actually a deadly weapon.  Appellant argues that, as one
> of the State's expert witnesses testified that there was only a 50 percent
> chance that the towel killed the victim, there was insufficient evidence
> to prove that the towel was a deadly weapon.  Appellant fails to
> demonstrate that his appellate counsel's performance was deficient or
> that he was prejudiced.  During trial, both of the State's expert
> witnesses testified that in their opinion, the cause of death was
> strangulation by ligature.  Their testimony, taken together with the fact
> that the victim's body was found with a towel around his head and
> neck, indicates that there was sufficient evidence presented for a
> reasonable juror to conclude that the towel constituted a deadly
> weapon.  Thus, appellant fails to demonstrate that this issue had a
> reasonable probability of success on appeal.  Therefore, the district
> court did not err in dismissing this claim without conducting an
> evidentiary hearing.

(Exhibit 98, at pp. 11-12).  Because the Nevada Supreme Court was given an opportunity to address

this issue and they found both that a towel could be used as a deadly weapon (*id.*, at p. 8) and that

there was sufficient evidence in this case to support the deadly weapon enhancement (*id.*, at p. 12), it

follows that, had appellate counsel presented the issue to this same court earlier, it would have had

no reasonable likelihood of success.

Regarding the claim that appellate counsel should have challenged the evidence of intent to

commit first-degree murder, the Nevada Supreme Court determined that such a claim did not have a

reasonable probability of success on appeal.  (Exhibit 98, at p. 12).  Having previously rejected

petitioner's claim that trial counsel was ineffective for failing to argue lack of intent and having

concluded that "there was substantial evidence of appellant's guilt," consistency required the

1   conclusion that a claim of ineffective assistance of appellate counsel was likewise without merit.

2   (Exhibit 98, at pp. 8-9, 12).

3           And, even assuming that appellate counsel should have challenged the evidence of intent to

4   commit first-degree murder under the theory of aiding and abetting, as petitioner argues, petitioner

5   fails to show prejudice.  The jury convicted petitioner of robbery, and he was guilty of felony

6   murder.  The only intent required to sustain a conviction for first-degree murder under the felony-

7   murder rule is the intent to commit the underlying felony.  *State v. Contreras*, 118 Nev. 332, 334, 46

8   P.3d 661, 662 (2002).  Petitioner's intent to commit robbery was established by his own confession.

9   "Baltazar-Monterrosa eventually stated that he had participated in Werner's killing, along with

10  another person known to him only as 'Gordo.'  Baltazar-Monterrosa also acknowledged that he had

11  agreed with Gordo that they were going to take Werner's money."  (Exhibit 70, at p. 4).  Because

12  there was overwhelming evidence that petitioner was guilty of felony murder, a claim that he did not

13  possess the requisite intent to sustain a conviction under a theory of aiding and abetting would have

14  no probability of leading to relief on appeal.  *See Cortinas v. State*, 195 P.3d 315, 324 (2008) (stating

15  that the presentation of an invalid theory of murder to a jury will be reviewed for harmless error).

16

17           Petitioner has not overcome the presumption of correctness afforded to the state court's

18  factual findings.  28 U.S.C. § 2254(e)(1).  The Nevada Supreme Court cited to and applied the

19  correct federal standard of *Strickland v. Washington*, 466 U.S. 668 (1984) and *Jones v. Barnes*, 463

20  U.S. 745 (1983).  (Exhibit 98, at pp. 2, 11-13).  Appellate counsel was not ineffective under the

21  deferential *Strickland* standard.  *Harrington v. Richter*, ___U.S. ___, 131 S.Ct. 770, 788 (2011).

22  Petitioner has failed to meet his burden of proving that the Nevada Supreme Court's ruling was

23  contrary to, or involved an unreasonable application of, clearly established federal law, as

24  determined by the United States Supreme Court, or that the ruling was based on an unreasonable

25

26

1   determination of the facts in light of the evidence presented in the state court proceeding.  This Court

2   denies habeas relief on Ground Seven of the federal petition.

3       **H. Ground Nine**

4       Petitioner asserts that his robbery conviction is invalid for lack of corpus delicti.  (ECF No. 4,

5   at pp. 31-33).  Petitioner raised this claim on direct appeal to the Nevada Supreme Court.  (Exhibit

6   66, at pp. 33-34).  The Nevada Supreme Court found this claim to be without merit, ruling as

7   follows:

8           Baltazar-Monterrosa argues that insufficient corpus delicti evidence
            supports his robbery conviction.   Baltazar-Monterrosa contends that
9           the only evidence that he robbed Werner was his own mistranslated
            statements to police.
10
            It has long been established that the corpus delicti must be
11          demonstrated by evidence independent of the confessions or
            admissions of the defendant.
12
            Confessions and admissions of the defendant may not be used to
13          establish corpus delicti absent sufficient independent evidence.  Once
            the state presents independent evidence that the offense has been
14          committed, admissions and confessions may then be used to
            corroborate the independent proof.  However, all other relevant
15          evidence may be considered.  The corpus delicti may be established by
            purely direct evidence, partly direct and partly circumstantial evidence,
16          or entirely circumstantial evidence.

17          Here, Werner's watch and ATM/check card were discovered between
            two mattresses in Baltazar-Monterrosa's room.  At trial, Werner's
18          daughter testified that Werner possessed these items on the afternoon
            of the day his body was discovered.  We conclude that independent
19          circumstantial evidence establishes the corpus delicti of a robbery
            committed by Baltazar-Monterrosa against Werner.
20
    (Exhibit 70, at p. 18) (internal citations and quotations omitted).
21
22      The Nevada Supreme Court's adjudication did not result in a decision that was contrary to, or

23   involved an unreasonable application of, clearly established federal law, as determined by the

24   Supreme Court of the United States.  Nor was the Nevada Supreme Court's decision based on an

25   unreasonable determination of the facts in light of the evidence presented in the state court

26   proceeding.  28 U.S.C. § 2254(d).  Moreover, Nevada's formulation of the corpus delicti rule is a

18

matter of state law and petitioner fails to show that his conviction for robbery violated any federal constitutional right. *See Evans v. Luebbers*, 371 F.3d 438, 442 (8th Cir. 2004) (concluding that petitioner's corpus delicti claim did not implicate federal constitutional rights); *see also Jacobs v. Horn*, 395 F.3d 92, 111 (3d Cir. 2005) (describing corpus delicti as a requirement of state law); *Major v. Johnson*, 92 F.3d 1385, 1393-94 (5th Cir. 1996) ("[Petitioner] cites no authority for the proposition that application of [corpus delicti] rule is constitutionally mandated"); *Gerlaugh v. Lewis*, 898 F. Supp. 1388, 1410 (D. Ariz. 1995) (rejecting corpus delicti claim in federal habeas action as raising a matter of state law). "[I]t is not the providence of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

In the instant case, even absent petitioner's confession, the evidence showed that he murdered the victim, and the victim's watch, bank card, and house key were found in petitioner's hotel room. (Exhibit 54, at pp. 49-51; Exhibit 56, at pp. 306-09, 312-14). Under Nevada law, this evidence was more than sufficient to satisfy the corpus delicti rule by creating "a reasonable inference that a [robbery] was committed." *See Gaxiola v. State*, 121 Nev. 638, 650, 119 P.3d 1225, 1234 (2005) (quoting *Doyle v. State*, 112 Nev. 879, 892, 921 P.2d 901, 910 (1996*), overruled on other grounds by Kaczmarek v. State*, 120 Nev. 314, 333, 91 P.3d 16, 29 (2004)). Having satisfied the rule, the State properly relied on petitioner's confession to corroborate the independent evidence and prove his guilt beyond a reasonable doubt, as found by the Nevada Supreme Court. (Exhibit 70, at p. 18). The factual findings of the state court are presumed correct and petitioner has not overcome the presumption of correctness afforded to the state court's factual findings. 28 U.S.C. § 2254(e)(1). Petitioner has failed to meet his burden of proving that the Nevada Supreme Court's ruling was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, or that the ruling was based on an unreasonable

1  determination of the facts in light of the evidence presented in the state court proceeding.  This Court

2  denies habeas relief on Ground Nine of the federal petition.

3  **IV.  Certificate of Appealability**

4      In order to proceed with his appeal, petitioner must receive a certificate of appealability.  28

5  U.S.C. § 2253(c)(1); Fed. R. App. P. 22; 9th Cir. R. 22-1;  *Allen v. Ornoski,* 435 F.3d 946, 950-951

6  (9th Cir. 2006); s*ee also United States v. Mikels*, 236 F.3d 550, 551-52 (9th Cir. 2001).  Generally, a

7  petitioner must make "a substantial showing of the denial of a constitutional right" to warrant a

8  certificate of appealability. *Id.;* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84

9  (2000).  "The petitioner must demonstrate that reasonable jurists would find the district court's

10  assessment of the constitutional claims debatable or wrong."  *Id.* (*quoting Slack*, 529 U.S. at 484).  In

11  order to meet this threshold inquiry, the petitioner has the burden of demonstrating that the issues are

12  debatable among jurists of reason; that a court could resolve the issues differently; or that the

13  questions are adequate to deserve encouragement to proceed further.  *Id.*

14      Pursuant to the December 1, 2009 amendment to Rule 11 of the Rules Governing Section

15  2254 and 2255 Cases, district courts are required to rule on the certificate of appealability in the

16  order disposing of a proceeding adversely to the petitioner or movant, rather than waiting for a notice

17  of appeal and request for certificate of appealability to be filed.  Rule 11(a).  This Court has

18  considered the issues raised by petitioner, with respect to whether they satisfy the standard for

19  issuance of a certificate of appealability, and determines that none meet that standard.  The Court

20  will therefore deny petitioner a certificate of appealability.

21  **V.  Conclusion**

22      **IT IS THEREFORE ORDERED** that the petition for a writ of habeas corpus is **DENIED**

23  **IN ITS ENTIRETY**.

24      **IT IS FURTHER ORDERED** that petitioner is **DENIED A CERTIFICATE OF**

25  **APPEALABILITY.**

26

1    **IT IS FURTHER ORDERED** that the Clerk **SHALL ENTER JUDGMENT**

2  **ACCORDINGLY.**

3           Dated this 7th day of March, 2013.

4

5                                        _____

6                                        UNITED STATES DISTRICT JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

21